UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ARIE BODEK, Individually, et al.,


                              Plaintiffs,

                                                      <u>DECISION AND ORDER</u>

                                                      06-CV-6022L


              v.

HARVEY S. BUNIS, in his individual and
official capacity as an Assistant District Attorney
for the County of Monroe of the State of
New  York, et al.,


                              Defendants.
_____


## PROCEDURAL BACKGROUND

        Plaintiffs, Arie Bodek ("Bodek") and his daughter Esther Bodek ("Esther"), appearing *pro*

*se*, commenced this action under 42 U.S.C. § 1983 and New York common law.  Plaintiffs allege

that defendants violated their constitutional rights in a number of respects in connection with an

incident that occurred on November 8, 2005, and the procedure utilized as part of the Monroe

County District Attorney's Office "Pre-Warrant Screening Program."

        Plaintiffs have sued two groups of defendants. For purposes of this motion, the "private

defendants" are Priscilla Auchincloss ("Auchincloss"), Bodek's estranged wife who is suing Bodek

for divorce; Sharon Kelly Sayers ("Sayers"), an attorney who represents Auchincloss in her

matrimonial action against Bodek; The Law Offices of Sharon Kelly Sayers ("the Sayers Law Office"), a professional corporation; and Kelly L. Pleszewicz ("Pleszewicz"), Sayers' office manager and daughter.

The "public defendants," sued in both their individual and official capacities, are Monroe County District Attorney Michael Green ("Green"); Monroe County Assistant District Attorney Harvey Bunis ("Bunis"), director of the Screening Program; and Monroe County Court Security Officer Joe Amorese ("Amorese"). Plaintiffs have also sued the Law Offices of Harvey Bunis ("the Bunis Law Office"), a professional corporation.

In their amended verified complaint (Dkt. #10), plaintiffs claim that the private defendants initiated the Pre-Warrant Screening Program ("Screening Program") against them after the November 8, 2005, incident in order to gain a tactical advantage in the matrimonial action between Bodek and Auchincloss. Plaintiffs further allege that the public defendants administered the Screening Program in such a way as to violate plaintiffs' First, Fourth, and Fifth Amendment rights.

The private and public defendants now move to dismiss the amended complaint and/or for summary judgment (Dkts. ## 9, 14). For the reasons set forth below, defendants' motions are granted and this action is dismissed.


## FACTUAL BACKGROUND

*The November 8, 2005 Incident*

Unless otherwise indicated, the following facts are undisputed. On November 8, 2005, there was an altercation at the Sayers Law Office between Esther and Pleszewicz. Pleszewicz prevented

Esther from entering Sayers's private office to speak with her father.  At the time, Sayers and Bodek (who was representing himself) were in the midst of a settlement conference pertaining to the divorce proceedings.  Although Bodek had arrived for the conference with Esther (his adult daughter from a previous marriage), Sayers did not permit Esther to sit in on or participate in the conference. Esther stayed in the reception area while Bodek and Sayers conducted the conference in Sayers's private office.

After approximately thirty minutes, Sayers's secretary interrupted the conference at Esther's request to retrieve Bodek's car keys.  Esther then left the Sayers Law Office with the keys and returned twenty minutes later.  As the one-hour conference was nearing its end, Esther again requested that the conference be interrupted so that she could speak with her father.

According to Pleszewicz, when Sayers's secretary told Esther that she would not interrupt the conference again unless it was an emergency, Esther allegedly became belligerent.  Pleszewicz then interrupted the conference by intercom and told Sayers that Esther was demanding to speak with Bodek.

Within minutes, after Bodek did not emerge from the conference, Esther attempted to force her way into Sayers's private office.  Pleszewicz claims that she blocked the hallway so that Esther could not pass by her and disrupt the conference.  She asked Esther to leave and threatened to call the police.  Esther allegedly pushed and shoved Pleszewicz, and yelled "My father is not a prisoner" and "Go ahead and call the police."  Esther then allegedly threw the heavy set of keys at Pleszewicz, striking her and causing her pain.

Upon hearing the commotion in the hallway, Sayers and Bodek emerged from the settlement conference.  Bodek picked up his keys off the floor and escorted Esther by the arm out of the Sayers Law Office.  According to Sayers, Bodek told her that Esther wanted the conference interrupted so that she could tell her father that the parking meter was about to expire.

During the incident, a staff member called the Rochester City Police ("RPD"), who arrived after Bodek and Esther had left.  An application for an arrest warrant for Esther was prepared by the RPD for Harassment, 2nd Degree.  The warrant application was then sent to the Monroe County District Attorney's Office as part of the Screening Program. On December 9, 2005, a temporary order of protection was issued by City Court directing Esther to have no contact with Pleszewicz.

*The Pre-Warrant Screening Program*

Defendant Bunis has been employed for over twenty six years as a part-time Assistant District Attorney for the Screening Program. According to Bunis, the Screening Program is an attempt by the District Attorney's Office, the RPD, and Rochester City Court to reduce the number of arrest warrants and criminal complaints for minor criminal actions filed in City Court. When an arrest warrant application is prepared by the RPD for certain minor crimes, it is forwarded to the Screening Program before a warrant issues.

The District Attorney's Office sends letters to the victim and the accused notifying them of a "pre-warrant hearing" date.  The letter informs the victim that if she fails to appear, the case will be dismissed.  The accused is informed that she may bring an attorney to the hearing and that her failure to appear may result in the issuance of a warrant.  The hearing is not open to the public.  At

the hearing, Bunis meets with the victim and the accused, and listens to both sides of the dispute. An attempt is then made to resolve the matter by mutual agreement between the parties.

Bunis states that he does not investigate the criminal accusations, nor does he make a determination of guilt or of probable cause. Instead, his function is to determine if the victim wishes to prosecute the case, if the facts as stated by the victim merit prosecution, and if the matter can be resolved by mutual agreement between the parties. If no agreement can be reached, Bunis then authorizes the victim to file the arrest warrant application for review by a City Court Judge, thus initiating criminal prosecution of the matter.

Here, a pre-warrant hearing took place on December 7, 2005, at which Pleszewicz appeared. Esther did not appear at that hearing, for reasons that are not entirely clear. According to plaintiffs, Bunis told Bodek sometime before the hearing that Esther's appearance was not necessary and that Bodek could appear on her behalf. However, on the date of the hearing, Bunis refused to allow Bodek to speak at the hearing because Bunis learned that Bodek was not present during the incident between Esther and Pleszewicz. (Dkt. #10, ¶¶42-44). Pleszewicz agreed to dispose of the case with an adjournment in contemplation of dismissal, but Bodek refused the offer on behalf of Esther. Bunis, therefore, authorized Pleszewicz to file the arrest warrant application.

Plaintiffs did not file affidavits in opposition to defendants' motions disputing defendants' account of the November 8, 2005 incident or the administration of the Screening Program. However, in the amended verified complaint, Esther states that on November 8, 2005, Pleszewicz "physically pushed [her] to prevent [her] from retrieving [Bodek] from a meeting with Defendant Sayers," (Dkt. #10, ¶29), and that Pleszewicz "perpetrated unwanted physical contact against [her] by repeatedly

slapping at and pushing [her]." (Dkt. #10, ¶76). It is evident, then, that plaintiffs' version of the November 8, 2005, incident differs from the defendants' version.

In fact, the public defendants assert that sometime after the December 7, 2005, hearing, Esther filed a report with the RPD charging Pleszewicz with harassment. The RPD prepared an arrest warrant application for Pleszewicz and referred the matter to the Screening Program. Another pre-warrant hearing took place on January 11, 2006. By this time, Esther was being prosecuted in City Court based on the November 8 incident. Accordingly, based on Esther's Fifth Amendment right to remain silent, Bunis would not let Esther speak at the January 11 pre-warrant hearing.

The record does not indicate whether the arrest warrant application against Pleszewicz was filed, or how the criminal charges against Esther or Pleszewicz were resolved.

Plaintiffs also allege that defendant Amorese, a court security officer who was present during the January 11, 2006 pre-warrant hearing, threatened Esther with incarceration. Amorese also allegedly threatened Bodek with incarceration on February 3, 2006. It is undisputed that Amorese neither arrested nor detained plaintiffs at any time.

**DISCUSSION**

**I. Motion to Dismiss and Summary Judgment Standards**

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted, the court should grant the motion "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In ruling on such a motion, the Court must read the plaintiff's

complaint generously, drawing all reasonable inferences from the complaint's allegations, *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993), and accepting "the material facts alleged in the complaint as true." *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir.1991).

Consistent with those principles, the Court of Appeals for the Second Circuit has stated that a "complaint should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir.2003) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998)). The Court's task in deciding a Rule 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984).

Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court's role in summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Moreover, where the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999) (quotations omitted). Nevertheless, "proceeding *pro se* does not otherwise relieve [plaintiffs] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.*, No. 00 Civ. 8594, 2003 WL 102853,*5 (S.D.N.Y. Jan. 9, 2003) (citing cases); *see also Stinson v. Sheriff's Dep't of Sullivan County*, 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended"). Furthermore, either the movant or the district court must provide the *pro se* litigant with notice of the consequences of failing to respond to a motion for summary judgment. *Irby v. New York City Transit Auth.*, 262 F.3d 412, 413 (2d Cir.2001); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir.1999).

In the case at bar, notice was given to plaintiffs twice by the Court (Dkts. ##11, 19), as well as by the public defendants (Dkt. #24). On February 17, 2006, the private defendants moved to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6) and/or for summary judgment pursuant to FED. R. CIV. P. 56 (Dkt. #9). On February 27, 2006, the Court issued an order and notice, pursuant to *Irby*, advising plaintiffs of their obligations relative to the motion (Dkt. #11). Plaintiffs thereafter filed an amended complaint (Dkt. #10) that added new parties and amended certain factual allegations. The Court then issued an order deeming the private defendants' motion as pertaining to plaintiffs' amended complaint (Dkt. #19).

On March 14, 2006, the public defendants also moved to dismiss the amended complaint pursuant to FED. R. CIV. P. 12(b)(6) (Dkt. #14).  In support of their motion, however, the public defendants filed evidence considered to be outside the pleadings.  Therefore, pursuant to FED. R. CIV. P. 12(b), the Court converted the public defendants' motion to one that also sought summary judgment pursuant to Rule 56, and it issued a second *Irby* notice to plaintiffs (Dkt. #19).[1]

In opposition to defendants' motions, plaintiffs filed a memorandum of law (Dkt. #29) and "objections" to the Court's scheduling orders and *Irby* notices (Dkts. ##28, 30, 32).  They did not, however, comply with Rule 56(e) by filing affidavits or evidence showing there is a genuine issue for trial.[2]  Instead, plaintiffs rely on the allegations in their amended verified complaint.  Plaintiffs also argue that the Court's procedures, related to issuing the *Irby* notices and the Court's scheduling orders, contravene the Federal Rules of Civil Procedure because they are entitled to discovery.

---

[1]  In the second *Irby* notice, the Court also advised plaintiffs of the requirements of Rules 7.1(e) and 56 of the Local Rules of Civil Procedure that in opposition to defendants' motion, they must submit: (1) a memorandum of law containing relevant factual and legal argument; (2) one or more affidavits; and (3) a separate, short, and concise statement of the material facts as to which plaintiffs contend there exists a genuine issue to be tried.  The notice warned plaintiffs that "In the absence of such a statement by plaintiffs, all material facts set forth in defendants' statement of material facts not in dispute will be deemed admitted." (Dkt. #19).

[2]  Rule 56(e) provides that, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

## II.  Discovery and Rule 56(f)

Before turning to the merits of defendants' motions, I address plaintiffs' argument that they are entitled to discovery under Rule 56(f).  To forestall summary judgment on the basis that discovery is needed pursuant to Rule 56(f), a litigant is required to file an affidavit that includes "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994). Moreover, if the Court finds that a request for discovery is based on speculation as to what might be discovered, the Court can deny the request, even if properly and timely made.  *Id.* at 1138; *see also Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir.1991) ("In a summary judgment context, an 'opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion'") (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir.1981)).

Here, plaintiffs have made no attempt to identify what discovery is needed.  Nor have plaintiffs shown how the discovery sought would reasonably be expected to create a genuine issue of material fact.  For these reasons, plaintiffs' cursory reference to Rule 56(f) does not defeat defendants' motions.

## III.  Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983 , the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen*

*v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)).  In order to act "under color of state law," a person must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  A deprivation of a federal or constitutional right is actionable pursuant to § 1983 when the deprivation was caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  In this respect, the Supreme Court has held that "§ 1983 does not create a remedy for all conduct that may result in violation of 'rights, privileges, or immunities secured by the Constitution and laws.'  Its reach is limited to actions taken 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ....'" *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983).

In the instant case, plaintiffs have named both public and private individuals, and two private professional corporations.  The issues, therefore, are whether the private defendants may be considered "state actors" for the purposes of 42 U.S.C. § 1983; and whether plaintiffs can show that the public defendants deprived them of a cognizable constitutional right.  I find that plaintiffs cannot prevail on either issue.

## A.    Private Defendants

There is no dispute that the private defendants do not work for the State or County.  In some circumstances, it may be possible to establish that a private individual's actions were so closely aligned with the State's as to constitute state action. *See Tancredi v. Metropolitan Life Ins. Co.*, 316

F.3d 308, 312-13 (2d Cir.2003) (Private conduct can be fairly attributed to the State "only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself").  That is not the case here.

Plaintiffs do not allege a "close nexus" between the private defendants and the public defendants sufficient to consider the private defendants "state actors" under § 1983.  Instead, plaintiffs state in conclusory fashion that the private defendants "acted jointly or by mutual assent to the general course of conduct of all named Defendants to interfere with the Plaintiffs' ability to exercise or enjoy their rights, privileges or immunities as secured by United States law." (Dkt. #10, at ¶¶34-36).  They also allege that the private defendants "activated" the unconstitutional Screening Program, and used it to gain "a collateral advantage" in the matrimonial action between Bodek and Auchincloss. (Dkt. #10, ¶¶27, 31, 33).

Essentially, plaintiffs claim a conspiracy between the public and private defendants. This is not enough. "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir.2002).  In any event, it is undisputed that Bunis determined how the Screening Program was administered here, not the private defendants.  *Cf. Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir.1999) (where a police officer "exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct so as to render it a state actor under Section 1983.").

Furthermore, Pleszewicz and Sayers are entitled to summary judgment because providing a statement to the police concerning the November 8, 2005 incident is insufficient to establish state action under § 1983. *Ginsberg,* 189 F.3d at 272  ("[Providing] information to a police officer does not by itself make [defendant] a joint participant in state action under Section 1983.") (citing *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir.1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § [ ] 1983 ....")); *Fisk v. Letterman*, 401 F.Supp.2d 362, 377 (S.D.N.Y.2005) ("[A] private party who calls the police for assistance does not become a state actor unless the police were influenced in their choice of procedure or were under the control of a private party."); *see also Briscoe*, 460 U.S. at 329-30 ("It is beyond question that, when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.'").

This holds true even where, as plaintiffs assert, the statements or testimony is false. *See Middleton v. City of New York*, No. 04-CV-1304, 2006 WL 1720400, *8  (E.D.N.Y. June 19, 2006) ("Even if [defendant's] complaint was false, as plaintiff alleges, plaintiff has alleged no facts that would indicate [defendant] acted in concert with City defendants to file her false complaint"); *McArthur v. Bell*, 788 F.Supp. 706, 710 (E.D.N.Y.1992) ("A witness testifying in a state court proceeding-even if [she] is a state employee who has perjured [herself]-has not acted under color of state law for purposes of § 1983.").

Moreover, the claims against Sayers and Auchincloss are dismissed because plaintiffs allege purely private conduct on their part.  There are no allegations in the complaint that could be construed as asserting any "state action." (Dkt. #10, ¶¶ 34, 36).  In addition, Sayers has shown that

- 13 -

she was not involved in the November 8 incident and did not participate in the Screening Program whatsoever. (Dkt. #22, Sayers Aff.).

Plaintiffs' complaint against the Sayers Law Office is dismissed for the additional reason that plaintiffs do not allege that this professional corporation is a state actor or was involved in any constitutional violation.  The complained-of actions are attributed to Bunis, Sayers, and the other defendants only.  There is nothing to indicate how the Sayers Law Office was involved in the claims here, other than as Sayers's employer.   Plaintiffs, however, may not rely on the doctrine of *respondeat superior* to establish liability in a § 1983 action. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691-95 (1978).

Granting plaintiffs every reasonable inference and construing their claims liberally, they fail to raise an issue of fact regarding whether the private defendants acted "under color of state law." Accordingly, plaintiffs' § 1983 claims against Auchincloss, Sayers, Pleszewicz, and the Sayers Law Office are dismissed.

**B.     Public Defendants**

**1.     Individual Capacity Suits**

*a. Defendant Green*

A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional deprivation. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir.2001);  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

Plaintiffs' complaint alleges only that Green "*delegates* actual or apparent prosecutorial authority to administrators of the 'Pre-Warrant Pilot Program' as a custom, practice or procedure," and that "Green's investigative prosecutorial authority is indiscriminately *delegated* as a custom, practice or policy." (Dkt. #10, ¶¶ 7, 57) (emphasis supplied).  These allegations are insufficient to show personal involvement in the alleged constitutional deprivations of plaintiffs.

A supervisory official cannot be held liable for damages merely because he was in a position of authority. *Monell*, 436 U.S. at 695 (the doctrine of *respondeat superior* does not apply to § 1983 claims); *see also Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985).  Instead, "[t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).  Plaintiffs' allegations against Green do not meet any of the above criteria, and the claims against him, therefore, are dismissed.[3]

---

[3]  In addition, to the extent that plaintiffs seek to hold Green liable based on the exercise of his prosecutorial discretion and decision-making, he is entitled to prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 424-27 (1976); *Shmueli v. City of New York*, 424 F.3d 231, 236-37 (2d Cir.2005).

  b.  *Defendant Bunis*

  I find that Bunis is entitled to summary judgment because plaintiffs' claims are barred by prosecutorial immunity.  "[A] state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" is entitled to absolute prosecutorial immunity from civil suit for damages.  *Imbler*, 424 U.S. at 410; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.").  In determining whether immunity applies in any particular case, courts "examine 'the nature of the function performed, not the identity of the actor who performed it.'" *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).

  Here, it is undisputed that Bunis did not make a determination of probable cause, nor did he attest to the veracity of the facts in support of the arrest warrant application. (Dkt. #14, Ex. B).  *C.f. Kalina*, 522 U.S. at 129 (prosecutor who signed a sworn affidavit attesting to facts that provided "the evidentiary support for the finding of probable cause" in an application for an arrest warrant did not have absolute immunity from suit because she "performed an act that any competent witness might have performed").

  In the instant case, plaintiffs have not come forward with evidence showing that Bunis acted outside the scope of his duties as a prosecutor, or that he took on an investigator's role instead.  To the contrary, plaintiffs failed to contest Bunis's affidavit in which he stated that he does not investigate the criminal accusations, and does not make determinations of guilt or probable cause.

Therefore, Bunis is entitled to summary judgment based on his absolute immunity from liability under § 1983. *Sheehan v. Colangelo*, 27 F.Supp.2d 344 (D.Conn.1998), *aff'd*, 53 Fed.Appx. 584 (2d Cir. Dec. 16, 2002) (prosecutor was entitled to absolute prosecutorial immunity for instructing police officer to prepare arrest warrant).

Moreover, plaintiffs' claims against Bunis fail to allege a sufficient violation of any constitutional right to give rise to a § 1983 claim. Plaintiffs' allegations that they were prevented from speaking at and attending the two pre-warrant hearings do not state cognizable First Amendment claims.[4] Plaintiffs do not allege that their speech was protected. Nor is there any claim that the pre-warrant hearing is open to the public or considered a public forum. It is well-settled that speakers may be excluded from nonpublic forums if they wish to address topics not within the purpose or agenda of the forum. *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806 (1985) ("Control over access to a non-public forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.").

### c. Defendant Amorese

Plaintiffs allege that Amorese threatened them with arrest or incarceration and otherwise harassed and intimidated them. This is not sufficient to state a cognizable constitutional violation

---

[4] Plaintiffs allege that Bunis violated Bodek's rights by "precluding [him] from exercising his first amendment rights in Courtroom III of the Monroe County Courthouse during a "Pre-warrant" hearing on December 7, 2005;" and by "[p]reventing [him] from attending a "pre-warrant hearing in Courtroom I of the Monroe County Courthouse on January 11, 2006." (Dkt. #10, ¶37(d) and (e)). Plaintiffs also allege Bunis violated Esther's rights by interfering with her "freedom to speak about the battery perpetrated against her by Defendant Pleszewicz [at the] January 11, 2006 [pre-warrant hearing]." (Dkt. #10, ¶37(c)).

under § 1983.  "The law is clear that verbal harassment or even threats alone are not actionable under 42 U.S.C. § 1983." *Cotz v. Mastroeni*, 476 F.Supp.2d 332, 372 (S.D.N.Y.2007).

Moreover, the mere threat of an arrest, without more, does not give rise to a "seizure" under the Fourth Amendment.  The Fourth Amendment prohibits "police seizures of persons for custodial interrogation-even brief detentions falling short of arrest-without probable cause." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir.2001),  "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)).

Here, plaintiffs do not allege facts sufficient to show that Amorese's conduct constituted a "seizure" within the meaning of the Fourth Amendment. *C.f. Bennett v. Town of Riverhead*, 940 F.Supp. 481, 488 (E.D.N.Y.1996) (threat by officer to arrest parent if parent did not turn child over to officer could constitute "seizure" for purposes of Fourth Amendment because "[plaintiff's] only options were to hand over her child or to be arrested; ignoring Sergeant Peeker's threat of arrest was impossible."); *see also Svitlik v. O'Leary*, 419 F.Supp.2d 189, 190 (D.Conn.2006) (question of fact as to whether seizure occurred where "detectives forced [plaintiff] to go to the police department by expressly threatening to arrest him and tow his car if he refused."). Therefore, the claims against Amorese are dismissed.

### d.  Defendant Bunis Law Office

Plaintiffs' complaint against the Bunis Law Office is dismissed for failure to state a claim because there are no allegations in the amended complaint regarding how the Bunis Law Office violated plaintiffs' constitutional rights or was otherwise involved in the alleged violations.

## 2.  Official Capacity Suits

Plaintiffs also sued public defendants Green, Bunis, and Amorese in their "official capacities."  A suit against a public official is his "official capacity" under § 1983 is "only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690, n.55. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. … It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159 (1985); *see also Lewis v. Gallivan*, 315 F.Supp.2d 313, 316 (W.D.N.Y.2004); *Signorile v. City of New York*, 887 F.Supp. 403, 421-22 (E.D.N.Y.1995) (the NYCPD, as an agency of the City, may be sued only in the name of the City).

Here, Monroe County is the real entity in interest for the public defendants' actions taken in their "official capacities." *See Myers v. County of Orange*, 157 F.3d 66 (2d Cir.1998).  Because plaintiffs are proceeding *pro se*, and because the County clearly had notice of these claims,[5] the Court will consider Monroe County as the proper party for the official capacity claims against Amorese, Bunis and Green.

---

[5]  Indeed, counsel for the public defendants is the Monroe County Department of Law.

A local government such as Monroe County may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell*, 436 U.S. at 694; *see Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992). "To hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lewis*, 315 F.Supp.2d at 316 (citations and quotations omitted); *see also Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996).

Plaintiffs' complaint asserts that the Screening Program constitutes an arbitrary and invalid official custom, practice or procedure, and that it is "unconstitutional on its face as applied as a custom, practice or procedure of the County of Monroe and Defendant Green . . . ." (Dkt. #10, ¶¶ 22, 33, 51). Plaintiffs allege that their rights were violated by the administration of the Screening Program because they were not given information regarding the subject-matter of the pre-warrant hearing, nor of any policies, rules, or guidelines regarding the Screening Program. They also claim constitutional violations because the pre-warrant hearing was not attended by any police officers nor transcribed by a court reporter. Finally, plaintiffs claim that the Screening Program operated in derogation of Esther's right to equal protection because she was an out-of-state resident.

Plaintiffs have failed to raise an issue of fact warranting trial regarding whether Monroe County deprived them of any constitutional right in connection with the administration of the Screening Program. Bodek was not a party to the Screening Program, as he was never accused of a crime. Therefore, his rights were never implicated in connection with the administration of the Screening Program in the dispute between Esther and Pleszewicz. In addition, Esther has failed to

demonstrate how any of the above characteristics of the Screening Program deprived her of a constitutional right. The Screening Program serves only as a benefit to one accused of a minor crime, and participation in the program is purely voluntary. There is no claim that Esther was not afforded due process in connection with the criminal charges that were filed against her. Therefore, plaintiffs' § 1983 claims against Monroe County are dismissed.[6]

## IV.  State Law Claims

Finally, I decline to exercise supplemental jurisdiction over plaintiffs' third and fourth claims brought under New York common law for abuse of process and battery. The Second Circuit has stated that, in general, "if [all] federal claims are dismissed before trial ..., the state claims should be dismissed as well." *Castellano v. Board of Trustees*, 937 F.2d 752, 758 (2d Cir.1991) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)); *accord Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir.2001); *see also Sadallah v. City of Utica*, 383 F.3d 34, 40 (2d Cir.2004) ("because plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court"). Plaintiffs' third and fourth claims, therefore, are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

---

[6]  Although deficient pleadings of *pro se* litigants that are amenable to cure through amendment generally are not dismissed without an opportunity to so amend, such leave may be denied where amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."). Here, under the circumstances of this case, any amendment of plaintiffs' papers against defendants will not result in cognizable claims against them under § 1983.

**CONCLUSION**

Defendants' motions to dismiss and/or for summary judgment (Dkts. ## 9,14) are granted in part.  Plaintiffs' first and second claims asserting violations of 42 U.S.C. § 1983 are dismissed.

Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over plaintiffs' third and fourth claims based on New York State common law, and they are dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 23, 2007.